IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| NAYEF AMJAD QASHOU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:25-cv-00689-BL |
| | ) | |
| FOURTH QUARTER, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff Nayef Amjad Qashou, proceeding *pro se*, filed an Amended Complaint on October 17, 2025. (Doc. 14). On July 24, 2026, the Magistrate Judge recommended that the court dismiss the Plaintiff's case for failure to properly serve and for failure to state a claim. (Doc. 55). The Plaintiff filed objections to the recommendation. (Doc. 56).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."). A district court's

obligation to "make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made" requires a district judge to "give *fresh consideration* to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 673, 675 (1980) (internal quotations and citations omitted) (emphasis in *Raddatz*).

Since filing his objections to the recommendation, the Plaintiff has filed a motion seeking leave to file a second amended complaint and a proposed Second Amended Complaint. (Doc. 59). The proposed amended complaint was not presented to the Magistrate Judge. The undersigned is not required to accept arguments raised for the first time after a Magistrate Judge has submitted a recommendation. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

The Plaintiff's first objection is to the Magistrate Judge's conclusion that he "stands on the sufficiency of his allegations" and "does not suggest that he could plead additional facts to support his bare conclusion that Defendants acted by reason of his autism." (Doc. 55 at 13–14; *see* doc. 56 at 3–4). He argues that he did request leave to amend before the Magistrate Judge. Rather than engage with this objection, the court will consider the Plaintiff's proposed amendment.

Rule 15 directs that the court should freely give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The Eleventh Circuit has held that "[a] court must . . . afford a plaintiff an opportunity to amend his *pro se* complaint before dismissing with prejudice unless the plaintiff expresses a desire not to amend or an amendment would be futile." *Watkins v. Hudson*, 560 F. App'x 908, 911 (11th Cir. 2014). Here, the Plaintiff has already been afforded an opportunity to amend, (doc. 12), and it appears that allowing further amendment would be futile. Neither the proposed Second Amended Complaint nor the plans the Plaintiff expresses in his objections would cure the deficiencies identified by the Magistrate Judge.

The proposed Second Amended Complaint attempts to assert a Title III claim against each Defendant. The fundamental flaw from the first Amended Complaint remains: The Plaintiff does not allege that he was excluded from the bars *by reason of* his autism. He alleges the opposite.

Regarding the bar operated by Fourth Quarter LLC, the Plaintiff says he was banned from that establishment beginning on September 1, 2023. (Doc. 59-1 at 9 ¶ 16). The Plaintiff alleges he "was told that this was a decision of Skybar's general manager and that the identified reason was his 2019 arrest." (Doc. 59-1 at 9 ¶ 16). He specifically notes: "Plaintiff does not allege that the historical decision was initially made because of autism." (Doc. 59-1 at 9 ¶ 16). He reiterates: "Plaintiff recalls being told that the exclusion was a general-manager decision and that his

2019 arrest was identified as the reason. Plaintiff does not allege that the initial decision was made because Skybar then knew he had autism." (Doc. 59-1 at 10 ¶ 18). The Plaintiff further explains that someone had told the general manager about his former arrest and that the Plaintiff was "a terrorist." (Doc. 59-1 at 10 ¶¶ 19–20). The Plaintiff alleges that he was continuously excluded from the bar throughout 2024 and 2025 for the same reason. (Doc. 59-1 at 11–12).

Regarding the bar operated by Defendant Southeastern, the Plaintiff alleges that he was banned beginning in September 2023 and that when he went into the bar later, he was escorted out. (Doc. 59-1 at 13 ¶ 33). He notes that "Plaintiff does not allege that Southeastern knew of autism during those historical encounters." (Doc. 59-1 at 14 ¶ 35). Regarding the bar operated by Defendant 1716, the Plaintiff alleges that he was banned from the bar in October 2023. (Doc. 59-1 at 14 ¶ 37). He does not allege that he was excluded from that bar by reason of his autism diagnosis.

The Second Amended Complaint states explicitly that "[t]he Title III theory does not depend on alleging that any Defendant knew of autism when the historical exclusions began. It concerns current access and requested reasonable modification after disability notice, including individualized reconsideration and clear communication of materially applicable neutral patron rules." (Doc. 59-1 at 7 ¶ 3). The Plaintiff alleges that, on August 16, 2026, he approached the area outside the bar operated by Defendant 1716 and "disclosed autism, referred to ADA-related

obligations, and requested a reasonable accommodation," but that he "did not receive a meaningful modification, individualized reconsideration, or confirmation that he could return under neutral patron rules." (Doc. 59-1 at 14–15 ¶¶ 40–43). He further alleges that two days later he sent "written ADA Title III current-access and reasonable-modification request[s]" to each Defendant, which "requested a reasonable modification: rescission or modification of the apparent continuing restriction, or individualized reconsideration with clear neutral rules." (Doc. 59-1 at 15 ¶ 44, 19 ¶ 66).

It appears that the Plaintiff believes that, regardless of the reason for excluding him, upon learning of his disability, the Defendants were required to allow him access to their establishment with accommodations for his disability. (*See* 59-1 at 21 ¶ 79) ("To the extent Fourth Quarter continues the categorical or indefinite restriction without reasonable modification or individualized reconsideration after disability notice, Plaintiff is being denied full and equal enjoyment."). This is an incorrect understanding of the protection afforded by Title III. The Plaintiff repeats this point in his objections, arguing that the Defendants' ignorance of his disability and the arrest explanation Defendants offered for banning him from the bar do not defeat his Title III claim. The Plaintiff's arguments fail. He has not stated a Title III claim because he does not allege that he was denied access *by reason of* his disability.

The proposed Second Amended Complaint also includes a state-law claim for wantonness and a claim pursuant to 42 U.S.C. § 12203(b) for "interference, coercion, intimidation, or threats" against Defendant Fourth Quarter, LLC. (Doc. 59-1 at 22–26). These claims fail because the Plaintiff has not alleged that the Defendants' exclusion of him from their establishments violated Title III or breached any duty. Because it appears that allowing the Plaintiff to amend his pleading again would be futile, the court will adopt the Magistrate Judge's recommendation to dismiss this action with prejudice. *See Daker v. Bryson*, 841 F. App'x 115, 123 (11th Cir. 2020) (stating that the "general rule against dismissal with prejudice without notice does not apply if the claim is patently frivolous or if amendment would be futile").

The reasons the Plaintiff provides in his objections that he should be afforded an opportunity to amend his complaint also fail. He objects to the Magistrate Judge not considering his "statutory theories" and argues that he should be permitted to plead these theories. (Doc. 56 at 8). He notes that Title III "defines discrimination to include methods of administration with a discriminatory effect, unnecessary eligibility criteria that screen out or tend to screen out persons with disabilities, and a failure to make reasonable modifications necessary to afford access unless the entity proves fundamental alteration." (Doc. 56 at 8). Thus, he notes, "[a]n

exclusion can operate through a policy's effect, not only through an employee's words." (Doc. 56 at 9).

Referring to the arrest explanation provided by the Defendants,[1] the Plaintiff states that "if supportable facts connect the continuing use of that criterion or blanket ban to autistic traits, autism-linked misunderstanding, or disability-related effect, the stated reason [the arrest] can be part of the challenged policy rather than a conclusive defense to every Title III theory." (Doc. 56 at 7). The Plaintiff says he could amend his complaint to state this theory more clearly: "[The amended complaint] can plead separately for each Defendant: *the specific continuing ban or criterion; the facts, if any, linking its application to autism or autistic traits;* when and how Plaintiff disclosed disability or requested reconsideration; why the requested modification is necessary; and a narrower proposed modification." (Doc. 56 at 9) (emphasis added).

This argument fails. Even if the Plaintiff amended his complaint to allege that his arrest was discriminatorily based on his autism, it is not clear how that discrimination could be attributed to the Defendants, who did not effectuate the arrest, and who simply excluded the Plaintiff from their establishments.

[1] The Plaintiff objects to the Magistrate Judge taking judicial notice of the state criminal case referenced in the Plaintiff's complaint. He asserts that the Magistrate Judge took judicial notice of "the existence or content of criminal-case records to resolve disputed ADA causation or to establish the truth of disputed factual matters at Rule 12. Judicial notice is limited to facts not subject to reasonable dispute; recognizing a judicial act or record does not make every factual assertion within it indisputably true." (Doc. 56 at 7–8). The Magistrate Judge did not base any of his conclusions on the existence or truth of the judicial records; he merely discussed their content to provide context. The Plaintiff himself conceded that he was arrested. (Doc. 14 at 15).

Furthermore, even if the Plaintiff alleged that people with autism are in general arrested at a disproportionate rate and that, therefore, a blanket ban from an establishment based on prior arrests is discriminatory on the basis of disability, the problem for the Plaintiff is that he alleges not that he was banned by the Defendants based on a general policy banning all patrons with prior arrest records; instead, he notes that he was excluded because of his personal prior criminal record. There is no allegation that the Defendants banned all patrons with a prior arrest record. The Plaintiff cannot state a claim under Title III based on a hypothetical exclusionary policy (one that excludes all patrons with a prior arrest) to which he was never subjected. The Plaintiff also notes that due to the nature of his criminal record, he had been called "a terrorist." Thus, based on his own allegations, there was a neutral reason for the Defendants to deny the Plaintiff access to their establishments.

Critically, also, the proposed Second Amended Complaint (filed after the objections) does not attempt to advance this theory at all. It would be futile to allow the Plaintiff to amend his complaint.

At one point in his objections, the Plaintiff points out two cases that expanded the type of conduct that can constitute denial of full and equal enjoyment and held that hostile intent is not required to violate Title III. (Doc. 56 at 6). However, this does not address the key element that is lacking in the Plaintiff's current and proposed complaints, which is that he was denied access *by reason of* his disability.

Finally, the Plaintiff objects to the Magistrate Judge's recommendation to dismiss his entire case based on an examination of only his Title III claims. He relies on filings outside the Amended Complaint (specifically docs. 43 and 54) to assert that, in addition to a Title III claim, he has also asserted state-law "personal injury claims." (Doc. 56 at 4–5). However, he concedes that "the present labels or requested amounts" in the Amended Complaint do not "automatically state an Alabama tort." (Doc. 56 at 5). But, he says, "[a] focused amendment can identify, defendant by defendant, any legally supportable duty, conduct, injury, causation, remedy, and limitations basis; separate those counts from Title III; and omit unsupported labels or amounts." (Doc. 56 at 5). The Second Amended Complaint attempts to state a wantonness claim under Alabama law. (*See* doc. 59-1). To the extent that the Amended Complaint currently states any state-law claims, or that a Second Amended Complaint could adequately state a claim under Alabama law, the court would decline to exercise supplemental jurisdiction over those claims in light of the dismissal of the federal claims. *See Baggett v. First Nat'l Bank,* 117 F.3d 1342, 1353 (11th Cir. 1997). Therefore, the request to amend to add state-law claims is due to be denied as futile.

The court need not address the Plaintiff's objections in defense of his service of the Amended Complaint given that this case is due to be dismissed on the merits without leave to amend.

After careful review of the file and upon consideration of the recommendation of the Magistrate Judge, the court **OVERRULES** the Plaintiff's objections, (doc. 56), **ADOPTS** the recommendation of the Magistrate Judge (doc. 55), and orders as follows:

1. Southeastern and 1716's Motion to Dismiss (doc. 32) is **GRANTED** pursuant to Rule 12(b)(6).

2. The claims against Southeastern, 1716, and Skybar are **DISMISSED** with prejudice without further opportunity to amend.

3. The Plaintiff's motion to file an amended complaint (doc. 59) is **DENIED**.

4. The other pending motions (docs. 40 & 58) are **DENIED** as moot.

The court will enter a separate final judgment.

**DONE** and **ORDERED** on this the 10th day of September, 2026.

BILL LEWIS
UNITED STATES DISTRICT JUDGE