IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| NAYEF AMJAD QASHOU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:25-cv-00689-BL |
| | ) | |
| FOURTH QUARTER, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED ORDER**

The court's order of September 10, 2026, (doc. 61) is hereby **VACATED** and the following amended order is **ENTERED** in its place:

Plaintiff Nayef Amjad Qashou, proceeding *pro se*, filed an Amended Complaint on October 17, 2025. (Doc. 14). On July 24, 2026, the Magistrate Judge recommended that the court dismiss this action for failure to properly serve and for failure to state a claim. (Doc. 55). The Plaintiff filed objections to the recommendation. (Doc. 56).

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). A district judge must "make a *de novo* determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P.

72(b)(3) ("The district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."). A district court's obligation to "make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made" requires a district judge to "give *fresh consideration* to those issues to which specific objection has been made by a party." *United States v. Raddatz*, 447 U.S. 667, 673, 675 (1980) (internal quotations and citations omitted) (emphasis in *Raddatz*).

## I. The Plaintiff's Failure to Serve

The court will adopt the Magistrate Judge's recommendation to dismiss this action for failure to serve. In his objections, the Plaintiff seeks an extension of time in which to serve the Defendants. (Doc. 56 at 11–12). The Plaintiff points out that he filed several service-related documents while the Defendants' Rule 12(b)(5) motion to dismiss was pending. (*See* docs. 50, 52, 54). However, none of those filings included proof of proper service. Given the passage of time and previous opportunities the Plaintiff has received, the court agrees with the Magistrate Judge's recommendation not to give the Plaintiff a further extension of time in which to serve the Defendants. The Plaintiff's motion to re-serve Defendant Skybar (doc. 40) is due to be denied. This action is due to be dismissed without opportunity to re-serve.[1]

[1] As the Magistrate Judge pointed out (doc. 55 at 15, n.8), although this dismissal on jurisdictional grounds is without prejudice, it could have the effect of a dismissal with prejudice in light of the applicable statute of limitations.

## II. The Plaintiff's Failure to State a Claim in the Amended Complaint

As an alternative basis for dismissal, the Magistrate Judge found that the Amended Complaint failed to state a claim and that allowing further amendment would be futile. (Doc. 55 at 13–14). The Plaintiff's first objection is to the Magistrate Judge's conclusion that he "stands on the sufficiency of his allegations" and "does not suggest that he could plead additional facts to support his bare conclusion that Defendants acted by reason of his autism." (Doc. 55 at 13–14; *see* doc. 56 at 3–4). The Plaintiff argues that he did request leave to amend before the Magistrate Judge. He specifically cites to three motions he filed while the Defendants' motion to dismiss was pending: documents 35, 43, and 54.

The third element of a Title III ADA claim is the denial of full and equal enjoyment of a premises by reason of one's disability. *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013). Throughout his argument before the Magistrate Judge, the Plaintiff did not describe any new allegations he could include in a second amended complaint to overcome the fundamental flaw in his pleading: "his bare conclusion that Defendants acted by reason of his autism." (Doc. 55 at 14). In concluding that the Plaintiff stood on his allegations, the Magistrate Judge was not stating that the Plaintiff failed to request leave to amend; he was noting that the Plaintiff did not provide new allegations to cure that deficiency.

As noted in the recommendation, the Plaintiff has already been afforded an opportunity to amend his complaint. (*See* doc. 12). Based on the arguments presented before the Magistrate Judge,[2] the court agrees with the recommendation that allowing the Plaintiff to amend his pleading again would be futile; therefore, the court will adopt the Magistrate Judge's alternative reasoning for dismissing this action, i.e., failure to state a claim under Rule 12(b)(6). *See Daker v. Bryson*, 841 F. App'x 115, 123 (11th Cir. 2020) (stating that the "general rule against dismissal with prejudice without notice does not apply if the claim is patently frivolous or if amendment would be futile").

In his objections, the Plaintiff points out two cases that expanded the type of conduct that can constitute denial of full and equal enjoyment and held that hostile intent is not required to violate Title III. (Doc. 56 at 6). However, this argument does not address the key allegation lacking in the Plaintiff's complaint, which is that he was denied access *by reason of* his disability.

[2] Since filing his objections to the recommendation, the Plaintiff has filed a motion seeking leave to amend and a proposed Second Amended Complaint. (Doc. 59). This proposed amended complaint was not presented to the Magistrate Judge. The undersigned is not required to accept arguments raised for the first time after a Magistrate Judge has submitted a recommendation. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge."). Therefore, the court adopts the Magistrate Judge's recommendation to dismiss based on the failure of the Amended Complaint. But, moreover, as explained *infra*, the proposed Second Amended Complaint would also fail to state a claim.

The Plaintiff objects to the Magistrate Judge's characterization of Defendant Skybar as similarly situated to the other two Defendants for purposes of dismissing the claims against it *sua sponte*. While the Plaintiff cites his allegations that uniquely relate to Skybar, he does not challenge the Magistrate Judge's reasoning that the amended complaint fails to state a claim against Skybar for the same reason that it fails to state a claim against the other two Defendants, i.e., it does not allege the essential element that he was denied access by reason of his disability. (Doc. 55 at 12, n.7). Based on Rule 4(m) and the Plaintiff's repeated failure to state a claim against Skybar as set forth in the Magistrate Judge's recommendation, the court agrees that the case against Skybar is due to be dismissed.

The Plaintiff also objects to the Magistrate Judge's recommendation to dismiss his entire case based on an examination of only his Title III claims. He relies on filings outside of the Amended Complaint (documents 43 and 54) to argue that, in addition to a Title III claim, he has also asserted state-law "personal injury claims." (Doc. 56 at 4–5). However, he concedes that "the present labels or requested amounts" in the Amended Complaint do not "automatically state an Alabama tort." (Doc. 56 at 5). So, he says, "[a] focused amendment can identify, defendant by defendant, any legally supportable duty, conduct, injury, causation, remedy, and limitations basis; separate those counts from Title III; and omit unsupported labels or amounts." (Doc. 56 at 5). Thus, the Plaintiff admits that the

operative complaint asserts no state-law claims. The court has already declined to allow the Plaintiff another opportunity to amend. Therefore, this objection is due to be overruled. In conclusion, the court adopts the Magistrate Judge's alternative basis for dismissing this action without leave to amend, which is that the Amended Complaint fails to state a claim and the Plaintiff is not entitled to amend a second time.

**III. The Possibility of Leave to Amend**

In his objections to the recommendation, the Plaintiff describes new factual allegations he would like to assert in an amended complaint. (*See* doc. 56). Additionally, since filing his objections to the recommendation, the Plaintiff has filed a motion seeking leave to amend and a proposed Second Amended Complaint. (Doc. 59). Allowing the Plaintiff leave to amend in this case would be futile. Neither the proposed Second Amended Complaint nor the plans the Plaintiff expresses in his objections would cure the key deficiency identified by the Magistrate Judge. The court will address each in turn:

The proposed Second Amended Complaint attempts to assert a Title III claim against each Defendant. The fundamental flaw from the first Amended Complaint remains: The Plaintiff does not allege that he was excluded from the bars *by reason of* his autism. In fact, he alleges the opposite.

Regarding the bar operated by Fourth Quarter LLC, the Plaintiff says he was banned from that establishment beginning on September 1, 2023. (Doc. 59-1 at 9 ¶ 16). The Plaintiff alleges he "was told that this was a decision of Skybar's general manager and that the identified reason was his 2019 arrest." (Doc. 59-1 at 9 ¶ 16). He specifically notes: "Plaintiff does not allege that the historical decision was initially made because of autism." (Doc. 59-1 at 9 ¶ 16). He reiterates: "Plaintiff recalls being told that the exclusion was a general-manager decision and that his 2019 arrest was identified as the reason. Plaintiff does not allege that the initial decision was made because Skybar then knew he had autism." (Doc. 59-1 at 10 ¶ 18). The Plaintiff further explains that someone had told the general manager about his former arrest and that the Plaintiff was "a terrorist." (Doc. 59-1 at 10 ¶¶ 19–20). The Plaintiff alleges that he was continuously excluded from the bar throughout 2024 and 2025 for the same reason. (Doc. 59-1 at 11–12).

Regarding the bar operated by Defendant Southeastern, the Plaintiff alleges that he was banned beginning in September 2023 and that, when he went into the bar later, he was escorted out. (Doc. 59-1 at 13 ¶ 33). He notes he "does not allege that Southeastern knew of autism during those historical encounters." (Doc. 59-1 at 14 ¶ 35). As to the bar operated by Defendant 1716, the Plaintiff alleges that he was banned in October 2023. (Doc. 59-1 at 14 ¶ 37). He does not allege that he was excluded from that bar by reason of his autism diagnosis.

The Second Amended Complaint states explicitly that "[t]he Title III theory does not depend on alleging that any Defendant knew of autism when the historical exclusions began. It concerns current access and requested reasonable modification after disability notice, including individualized reconsideration and clear communication of materially applicable neutral patron rules." (Doc. 59-1 at 7 ¶ 3). The Plaintiff alleges that, on August 16, 2026, he approached the area outside the bar operated by Defendant 1716 and "disclosed autism, referred to ADA-related obligations, and requested a reasonable accommodation," but that he "did not receive a meaningful modification, individualized reconsideration, or confirmation that he could return under neutral patron rules." (Doc. 59-1 at 14–15 ¶¶ 40–43). He further alleges that, two days later, he sent "written ADA Title III current-access and reasonable-modification request[s]" to each Defendant, which "requested a reasonable modification: rescission or modification of the apparent continuing restriction, or individualized reconsideration with clear neutral rules." (Doc. 59-1 at 15 ¶ 44, 19 ¶ 66).

It appears that the Plaintiff believes that, regardless of the reason for excluding him, the Defendants were required upon learning of his disability to allow him access to their establishment as an "accommodation" for his disability or perhaps with accommodations for his disability. (*See* 59-1 at 21 ¶ 79) ("To the extent Fourth Quarter continues the categorical or indefinite restriction without reasonable

modification or individualized reconsideration after disability notice, Plaintiff is being denied full and equal enjoyment."). This is an incorrect understanding of the protection afforded by Title III. The Plaintiff repeats this point in his objections, arguing that the Defendants' ignorance of his disability and the arrest explanation Defendants offered for banning him from the bar do not defeat his Title III claim. The Plaintiff's arguments fail.

The Second Amended Complaint also asserts a claim pursuant to 42 U.S.C. § 12203(b) for "interference, coercion, intimidation, or threats." (Doc. 59-1 at 24–26). This claim also fails. The complaint does not allege that the Defendant engaged in coercion, intimidation, or threats. The § 12203(b) claim is based on the following:

> 51. On August 19, 2026, after Plaintiff's August 10 current-access and reasonable modification request, counsel sent a further written response on behalf of Fourth Quarter, LLC. The response was sent by Davis B. Whittelsey to Plaintiff with Jonathan K. Corley copied, and it concerned the same Fourth Quarter/Sky bar ADA request and this action.
>
> 52. The response stated, in substance, that Fourth Quarter had authorized counsel to pursue available remedies if Plaintiff continued the conduct Fourth Quarter characterized as harassing, annoying, or interfering with its business, and that counsel was authorized to seek recoverable sanctions, costs, and attorney's fees under Rule 11, the ADA, or otherwise.
>
> 53. The response demanded that Plaintiff withdraw his objection to the Magistrate Judge's Recommendation, forgo further action against Fourth Quarter, and cease conduct Fourth Quarter characterized as vexatious, harassing, or interfering. It stated that, if Plaintiff agreed and complied, Fourth Quarter would forgo seeking the sanctions, costs, attorney's fees, and other remedies described in the response.

> 54. Plaintiff does not allege that the mere communication of a sanctions warning or adverse litigation position is unlawful. The August 19 communication is alleged only to the extent it contained the combined authorization, demands, threatened remedies, and conditional forbearance described in paragraphs 52-53.
>
> 55. Plaintiff alleges that the combined conditional communication was made on account of his exercise or enjoyment of current ADA rights and constituted, or threatened, coercion, intimidation, or interference with those rights because forbearance from the stated consequences was conditioned on withdrawal of the objection, abandonment of further action, and cessation of conduct encompassing Plaintiff's continued effort to obtain ADA access and reasonable modification. Plaintiff has not withdrawn or abandoned those rights.

(Doc. 59-1 at 16–17). The alleged statements did not constitute coercion, intimidation, or threats; they came from opposing counsel and merely stated the potential consequences of the litigation (costs, fees, and sanctions), and called for the Plaintiff to dismiss his claims in lieu of being subject to those natural consequences. *See, e.g.*, *Haynes v. Reading Hosp.*, No. 5:25-CV-4992, 2026 WL 161769, at *7 (E.D. Pa. Jan. 21, 2026). The § 12203(b) claim is due to be dismissed.

Finally, the proposed Second Amended Complaint includes a state-law claim for wantonness against Defendant Fourth Quarter, LLC. (Doc. 59-1 at 22–24). This claim would fail because the Plaintiff has not alleged that the Defendants' exclusion of him from their establishments breached any duty.

The reasons the Plaintiff provides in his objections that he should be afforded an opportunity to amend his complaint also fail.[3] First of all, his suggestion that a proposed complaint could adequately state a claim under Alabama law is inapposite because, to the extent that a second amended complaint could adequately state a claim under Alabama law, the court would decline to exercise supplemental jurisdiction over such a claim in light of the lack of federal claims. *See Baggett v. First Nat'l Bank,* 117 F.3d 1342, 1353 (11th Cir. 1997).

The Plaintiff also objects to the Magistrate Judge not considering his "statutory theories" and argues that he should be permitted to plead these theories. (Doc. 56 at 8). He notes that Title III "defines discrimination to include methods of administration with a discriminatory effect, unnecessary eligibility criteria that screen out or tend to screen out persons with disabilities, and a failure to make reasonable modifications necessary to afford access unless the entity proves fundamental alteration." (Doc. 56 at 8). Thus, he notes, "[a]n exclusion can operate through a policy's effect, not only through an employee's words." (Doc. 56 at 9). He describes his theory as follows: Referring to the arrest explanation provided by

[3] To the extent that the proposed allegations in his objections constitute new arguments which were not presented to the Magistrate Judge, the court need not even consider them. *See Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("[A] district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge.").

the Defendants,[4] the Plaintiff states that "if supportable facts connect the continuing use of that criterion or blanket ban to autistic traits, autism-linked misunderstanding, or disability-related effect, the stated reason [the arrest] can be part of the challenged policy rather than a conclusive defense to every Title III theory." (Doc. 56 at 7). The Plaintiff says he could amend his complaint to state this theory more clearly: "[The amended complaint] can plead separately for each Defendant: the specific continuing ban or criterion; the facts, if any, linking its application to autism or autistic traits; when and how Plaintiff disclosed disability or requested reconsideration; why the requested modification is necessary; and a narrower proposed modification." (Doc. 56 at 9) (emphasis added).

This theory fails. Even if the Plaintiff amended his complaint to clearly allege that his arrest was discriminatorily based on his autism, it is not clear how that discrimination could be attributed to the Defendants, who did not effectuate the arrest, and who simply excluded the Plaintiff from their establishments based on the arrest. Furthermore, even if the Plaintiff alleged that people with autism are in

[4] The Plaintiff objects to the Magistrate Judge taking judicial notice of the state criminal case referenced in the Plaintiff's complaint. He asserts that the Magistrate Judge took judicial notice of "the existence or content of criminal-case records to resolve disputed ADA causation or to establish the truth of disputed factual matters at Rule 12" but "[j]udicial notice is limited to facts not subject to reasonable dispute; recognizing a judicial act or record does not make every factual assertion within it indisputably true." (Doc. 56 at 7–8). The Magistrate Judge did not base any of his conclusions on the existence or truth of the judicial records; he merely discussed their content to provide context for the Plaintiff's allegations. The Plaintiff himself conceded that he was arrested. (Doc. 14 at 15).

general arrested at a disproportionate rate and that, therefore, a blanket ban from an establishment based on prior arrests is discriminatory on the basis of disability, the problem for the Plaintiff is that he alleges not that he was banned by the Defendants based on a general policy banning all patrons with prior arrest records; instead, he says that he was excluded because of his personal prior criminal record. The Plaintiff cannot state a claim under Title III based on a hypothetical exclusionary policy to which he was never subjected. The Plaintiff also notes that due to the nature of his criminal record, he had been called "a terrorist." Thus, based on his own allegations, there was a neutral reason for the Defendants to deny the Plaintiff access to their establishments. It would be futile to allow the Plaintiff to amend his complaint.

After careful review of the file and upon consideration of the recommendation of the Magistrate Judge, the court **OVERRULES** the Plaintiff's objections, (doc. 56), **ADOPTS** the recommendation of the Magistrate Judge (doc. 55), and **ORDERS** as follows:

1. Southeastern and 1716's Motion to Dismiss (doc. 32) is **GRANTED** pursuant to Rule 12(b)(6).

2. The claims against Southeastern, 1716, and Skybar are **DISMISSED** without prejudice without further opportunity to amend.

3. The Plaintiff's motion to file an amended complaint (doc. 59) is **DENIED**.

4. The motion to re-serve Defendant Skybar (doc. 40) is **DENIED**.

The court will enter a separate final judgment.

**DONE** and **ORDERED** on this the 22nd day of October, 2026.

BILL LEWIS
UNITED STATES DISTRICT JUDGE